UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| KATHERINE NELL FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 15-098-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Katherine Nell Fields (hereafter, "Fields" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner). [Record Nos. 10, 11] Fields contends that the administrative law judge ("ALJ") assigned to her case erred by denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). [Record No. 10-1] She requests that her case be remanded for a calculation of benefits or, alternatively, for further administrative proceedings before a different ALJ. [Record No. 10-1, p. 14] The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Fields.

**I.**

On June 21, 2012, Fields filed concurrent applications for a period of disability and DIB under Title II of the Social Security Act ("the Act") and SSI under Title XVI of the Act. [Administrative Transcript, "Tr.," pp. 235, 242] Fields alleged a disability beginning in May

-1-

2008, but she later amended the onset date to October 28, 2010, to reflect the date a previous application for benefits was denied. [Tr. pp. 31, 235, 242] The Social Security Administration ("SSA") denied her current applications initially and upon reconsideration. [Tr. pp. 180, 187] Fields pursued and exhausted her administrative remedies with a hearing before the ALJ [Tr. p. 28], a written decision from the ALJ [Tr. p. 7], and review by the Appeals Council [Tr. p. 1]. Her case is now ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Fields was 53 years-old at the time of the ALJ's decision and had an eleventh-grade education. [Tr. pp. 21, 33] She was employed previously as cook at a Head Start center. [Tr. p. 50] She worked there for over twenty years but was fired in 2008 for missing too much work, allegedly due to back pain. [Tr. pp. 50–51] Fields contends that she is unable to work due to back pain, arm pain, vision problems, liver disease, a heart valve problem, and depression. [Tr. pp. 51, 60–61, 273]

In August 2012, Dr. Xiaoqin Wang, a state agency consultant, examined Fields. [Tr. p. 873–77] Dr. Wang observed that Fields had a slow gait but did not appear to be in acute distress. [Tr. p. 874] Wang further concluded that Fields had the ability to perform activities involving sitting, standing, walking, handling objects, seeing, and speaking. [Tr. p. 875] Wang found that Fields had normal gross manipulation and grip strength and that she had no sensation deficit in her feet. [Tr. p. 875] Wang concluded that Fields would be reasonably expected to be able to sit, stand or walk for short periods, and to use her upper extremities as needed to manipulate objects. [Tr. p. 875]

In November 2012, Dr. Helen O'Donnell, a state agency consultant, also examined Fields. [Tr. p. 906–12] Despite her liver disease, Fields reported daily alcohol use, as well as smoking a pack of cigarettes per day. [Tr. p. 908] Dr. O'Donnell noted that Fields' gait

appeared painful without an assistance device and that her balance was fair. [Tr. p. 909]. She also had some sensation deficits in her lower extremities. [Tr. p. 909] Based on the examination, Dr. O'Donnell opined that Fields would not be successful in a job requiring standing, bending, lifting, or intact balance. [Tr. p. 909] O'Donnell believed Fields, however, would be able to perform jobs involving sitting which allow frequent changes of position and appropriate breaks. Dr. O'Donnell also believed Fields could walk for short distances.

In September 2012, Timothy Baggs, Psy. D., a consultant for the state agency, performed a psychological examination of the Claimant. [Tr. p. 879–87] During the examination, Baggs observed no evidence of mental confusion or disorientation. [Tr. p. 883] He felt that Fields' mood was neutral and estimated her intellectual functioning to be in the "borderline to low-average" range. [Tr. p. 883] He deemed her insight and personal judgment to be "average-to-adequate." [Tr. p. 883]. Baggs opined that Fields had the ability to understand and remember simple instructions and had only a mild deficiency in her ability to maintain and sustain concentration. [Tr. p. 885] Further, he believed that she probably could relate adequately with people in a workplace or social setting. [Tr. p. 885] And he believed her abilities to adapt and respond to pressures found in a normal work setting were commensurate with those of an average worker. [Tr. p. 885] Baggs recommended treatment for what he described as Fields' "apparent substance abuse problem with alcohol." [Tr. p. 885]

In March 2013, Fields' attorney referred Fields to Dr. Robert Spangler for a psychological evaluation. [Tr. p. 934] Spangler found that Fields' concentration was good but that she frequently needed to have instructions repeated. [Tr. p. 934] Fields advised Spangler that her medical and mental problems began in 2003 when she was diagnosed with glaucoma. [Tr. p. 934] She also told him that she failed the GED test three times. [Tr. p. 935]

-3-

Spangler noted that Fields had adequate recall of remote and recent events and was cooperative, compliant, and forthcoming. [Tr. p. 935] Spangler concluded that Fields' judgment and insight were consistent with mild mental retardation to low/borderline intelligence. [Tr. p. 935]

After reviewing the record and considering the testimony presented at the administrative hearing, the ALJ determined that Fields had the following severe impairments: degenerative joint disease of the lumbar spine; hypertension; mood disorder; depressive disorder; borderline intellectual functioning; reading disorder; and a history of alcohol dependence. [Tr. p. 12] Notwithstanding those impairments, the ALJ determined that Fields had the residual functional capacity ("RFC") to perform medium work except she could perform no more than frequent stooping. [Tr. p. 16] With respect to mental limitations, the ALJ found that Fields was limited to simple, routine tasks and no more than occasional contact with the general public. [Tr. p. 16]

The ALJ determined that while Fields was unable to perform her past work as a Head Start cook, there were jobs existing in significant numbers that Field could perform, including linen room attendant, hand packager, and cleaner. [Tr. pp. 20–21] Accordingly, the ALJ concluded that Fields was not disabled from October 28, 2010, through February 27, 2014, the date of the decision. [Tr. p. 21]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security

disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"   *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).   If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.   *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.   20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments.   20 C.F.R. §§ 404.1520(c), 416.1520(c).   Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.   20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether she can perform her past work.   If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.   If she cannot perform other work, the Commissioner will find the claimant disabled.   20 C.F.R. §§ 404.1520(g), 404.416.920(g).   "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"   *White v. Comm'r*

*of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

**III.**

**A.    Substantial evidence supports the ALJ's finding that Fields did not meet Section 12.05(C).**

Fields contends that the ALJ erred in concluding that she did not meet Section 12.05(C) of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpart P, App. 1 ("Listing 12.05(C)), which defines intellectual disability.  A claimant must demonstrate the following to satisfy Listing 12.05(C):   (1) that she experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period;" [i.e., before age 22] (2) that she has a "valid verbal, performance, or full scale IQ of 60 through 70;" and (3) that she suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697–98 (6th Cir. 2007) (quoting Listing 12.05(C)). The ALJ acknowledged that Fields had subaverage intellectual functioning but noted that there was no evidence that this had manifested during Fields' developmental years.  [Tr. p. 16]

While Fields did drop out of school in the eleventh grade, she did not attend special education classes.  [Tr. p. 274]

Regardless, the ALJ considered Dr. Spangler's assessment in which Spangler assigned Fields a verbal comprehension index of 66, but determined that Fields' other physical and mental impairments did not impose significant work-related limitations.  [Tr. pp. 14–15]  In making this determination, the ALJ discussed the high level of function Fields had demonstrated—holding a skilled job for over 20 years, obtaining her driver's license, and managing her own finances.  [Tr. p. 16]  The ALJ noted that Fields' full scale IQ was 72 and even Dr. Spangler opined that the full scale IQ, as opposed to the verbal index, was the best indicator of Fields' overall cognitive ability.  [Tr. pp. 16, 937]

The ALJ's decision is supported by substantial evidence.  While Fields reported that she made poor grades in school, she has introduced no evidence that she experienced deficiencies in adaptive functioning during the developmental period.  Adaptive functioning includes areas such as social skills, communication, and daily living skills.  *West*, 240 F. App'x at 698.  While Dr. Spangler felt that Fields' current adaptive skills were somewhat limited, Fields held a long-term position with Head Start, demonstrating her ability to interact with others on a daily basis.  [Tr. p. 936]  Fields reported that she was in a leadership position at her job and supervised another individual.  [Tr. p. 275]  While Dr. Spangler opined that Fields might have been in the mild mental retardation range, he was the only source to done so.  [Tr. p. 936]  Dr. Baggs also examined Fields and he believed that her intellectual functioning was in the borderline to low-average range [Tr. p. 883]  Based on Baggs' opinion and the evidence of Fields' relatively high level of intellectual function, the ALJ did not err in determining that Fields did not meet Section 12.05(C) of the Listing of Impairments.

-7-

**B.      The ALJ did not err in finding that Fields' diagnoses of glaucoma and cataract were not severe.**

In April 2012, one of Fields' treating physicians, Dr. Bryson, diagnosed her with open angle glaucoma and senile nuclear cataract, prescribing eye drops to treat the conditions.  [Tr. p. 867]  Fields returned for a follow-up six months later at which time Dr. Bryson reported that the glaucoma and cataracts were stable and continued the eye drops.  [Tr. p. 870]  When state-examiner Dr. O'Donnell examined Fields in 2012, O'Donnell reported that Fields' "vision is poor and requires further evaluation; this can be expected to affect performance of fine and gross motor manipulation."  [Tr. p. 909]  However, there is no indication that Dr. O'Donnell examined or objectively tested Fields' eyes.  Fields testified at her hearing that her vision gets blurry sometimes.  [Tr. p. 57].

The ALJ considered Fields' diagnoses of glaucoma and cataracts, but determined that they were not severe.  [Tr. p. 13]  The ALJ noted that Fields' initial visit with Dr. Bryson was a routine check-up and Fields actually had no complaints at the time.  [Tr. pp. 13, 864]  Although Bryson diagnosed Fields with glaucoma and cataracts, the conditions were stable and her symptoms were controlled with eye drops.  [Tr. pp. 13, 868, 870]

An impairment can be considered "not severe" only if the impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience."  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89–90 (6th Cir. 1985). And an ALJ's failure to consider an impairment "severe" does not constitute reversible error when the ALJ finds that the claimant has other impairments that are severe and continues with the analysis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.

-8-

1987).  While the ALJ did not believe that Fields' glaucoma and cataracts were severe, she found that Fields had several other severe impairments, so the failure to classify the vision problems as "severe" is not reversible error.  *See id.*

Substantial evidence supports the ALJ's decision that Fields' vision problems were not disabling.  The only source who suggested that Fields' glaucoma and cataracts would affect her ability to work was Dr. O'Donnell.  [Tr. p. 909]  The ALJ found that O'Donnell's opinion was vague and inconsistent with the remainder of the record and thus she gave it little weight.  [Tr. p. 18]  She relied upon the treatment notes from Dr. Bryant who was not only Fields' treating physician, but also an ophthalmologist.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (discussing treating physician rule); *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (opinion of treating specialist entitled to greater weight).

Further, the record suggests that Fields did not feel that her vision problems were disabling.  In her application for benefits, she was asked to list all of the conditions that limited her ability to work.  She listed seven conditions, but none of them involved her vision.  [Tr. p. 273]  She informed Dr. Baggs that she had applied for disability based on her back problems and for no other reason.  [Tr. p. 879]  Dr. Wang also failed to note the existence of any vision problems and opined that Fields would be able to use her upper extremities as needed for the manipulation of objects.  [Tr. p. 875]  Finally, during her hearing with the ALJ, it was only after being prompted by her attorney that Fields mentioned having any vision problems.  [Tr. p. 57]  Fields testified that she spends approximately eight hours per day watching television and that she sometimes reads for pleasure.  [Tr. pp. 42–43]  Additionally, she reported doing typical household activities and, while she is limited to some degree by her back pain, she made no mention of being limited by vision problems.  [Tr. pp. 315–19]  Based on the

-9-

foregoing, the record contains substantial evidence for the ALJ to have reasonably concluded that Fields' vision problems were not severe.  The ALJ was not required to include vision in the RFC because the substantial evidence upon which she relied did not indicate that Fields had a vision impairment that would affect her ability to do medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).  *See* 20 C.F.R. §§ 416.945(d), 416.945(d).  [*See also* Tr. p. 64–65]

### C. The ALJ did not err with respect to the credibility determination.

Fields also contends that the ALJ erred in failing to ascribe complete credibility to her allegations regarding the intensity, persistence, and limiting effects of her symptoms. Specifically, Fields argues that the ALJ did not provide sufficient reasons for attributing diminished credibility.  The ALJ explained, however, that although Fields reported that her back and leg pain had gotten much worse since her previous application for benefits was denied in 2010, her allegations simply were not supported by medical evidence.  [Tr. p. 17]  While she exhibited some tenderness in her paraspinal muscles, her degenerative disc disease had not worsened.  [Tr. p. 17]  Her deep tendon reflexes were normal and she had a negative straight leg raise test in both the sitting and supine positions.  [Tr. 17]  She had some problems with walking but she was able to get on and off of the examination table with ease.  [Tr. p. 17]

The ALJ concluded that Fields' psychological treatment record diminished her credibility, as well.  [Tr. p. 19]  Fields sought mental health treatment from April 2010 through January 2011, but had experienced significant improvement by December 2010.  [Tr. p. 19] In September 2012, Dr. Baggs observed that Fields' energy level was normal and that she did not appear to be experiencing any psychological distress.  [Tr. p. 19]  While Dr. Spangler opined that Fields' mood was depressed and her affect was sad, the ALJ gave the opinion little

weight because his diagnosis was not supported by the record or Fields' own testimony.  [Tr. p. 19]

The ALJ's credibility determinations must be reasonable and supported by substantial evidence.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).  Further, the ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record."  *Id.*  In the present case, the ALJ's discussion of Fields' credibility is sufficiently specific to make clear to Fields and to any subsequent reviewers the weight the ALJ gave to Fields' statements and the reasons for the weight given.  *Id.* at 248.

**D.    The ALJ's decision that Fields is not disabled is supported by substantial evidence.**

Finally, Fields contends that the ALJ's determination that she is not disabled is not supported by substantial evidence.  Fields suggests that the ALJ did not consider the entire record, but does not identify which portions of the record the ALJ failed to consider.  If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently, *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994), and even if the claimant's position is also supported by substantial evidence.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Fields fails to raise any other specific arguments in this portion of her brief.  For the reasons explained in the preceding sections, the ALJ's findings are supported by substantial evidence.

Accordingly, for the foregoing reasons, it is hereby **ORDERED** as follows:

1.    Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 11] is **GRANTED**;

2.      Plaintiff Katherine Nell Fields' Motion for Summary Judgment [Record No. 10]

is **DENIED**; and

3.      The administrative decision will be **AFFIRMED** by separate Judgment entered

this date.

This 25th day of May, 2016.

Signed By:

*Danny C. Reeves*   DCR

**United States District Judge**